IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KATHERINE MARIE HILL, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | CV 17-68-M-JCL <br><br> ORDER |

Plaintiff Katherine Hill brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Hill alleges disability since May 18, 2013, due to multiple sclerosis, osteopenia, post-traumatic stress disorder (PTSD), depression, and a cognitive disorder. Hill's claim was denied initially and on reconsideration, and she requested an administrative hearing. In October 2015, the Administrative Law Judge (ALJ) issued a decision finding Hill not disabled within the meaning of the Act. The Appeals Council denied Hill's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction

1

vests with this Court pursuant to 42 U.S.C. § 405(g).

Hill was 52 years old at the time of her alleged onset date and 55 years old at the time of the ALJ's decision.

I. **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. **Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Hill meets the insured status requirements of the Act through December 31, 2018. The ALJ further found that Hill had not engaged in substantial gainful activity since her May 18, 2013, alleged onset date. At step two, the ALJ found that Hill's multiple sclerosis and osteopenia were severe impairments. At step three, the ALJ concluded that Hill did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Hill's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely credible. The ALJ determined that Hill had the residual functional capacity

4

to perform a reduced range of light work. The ALJ found that Hill was not disabled at step four because she could perform past relevant work as a medical receptionist and legal secretary. (Doc. 6-2, at 36-46).

Hill argues the ALJ's residual functional capacity assessment is not supported by substantial evidence and raises three main issues on appeal.[1] First, she argues the ALJ failed to properly consider the medical opinion evidence and fully develop the record with regard to her mental impairments. Second, Hill contends the ALJ did not properly weigh the medical opinion evidence with respect to her physical impairments. Third, Hill maintains the ALJ erred at step four by finding that she could perform her past relevant work despite vocational expert testimony to the contrary.

Hill first argues the ALJ failed to adequately account for her mental impairments when assessing her residual functional capacity. In particular, Hill contends the ALJ did not provide sufficiently specific and legitimate reasons for discounting a neuropsychological evaluation by examining psychologist William

---

[1] In her opening brief, Hill identifies credibility as one of the issues presented, but does not provide any supporting argument whatsoever. (Doc. 13). In her reply brief, Hill contends she was unable to include any supporting argument due to the word limit set forth in Local Rule 78.2(b). The Court finds this argument unpersuasive. This is not a particularly complex case, and Hill could have edited other portions of her brief to make room for this argument or sough leave of Court to file an overlength brief. Because she did neither, the Court considers it waived.

Patenaude, and failed to adequately develop the record. Dr. Patenaude examined Hill in June 2015, on a referral from her primary care provider who had been treating her for relapsing remitting multiple sclerosis and secondary memory loss (Doc. 6-7, at 458-66). Hill reported a history of cognitive increasing symptoms, including memory loss, confusion, difficulty with language, and the inability to multitask. Dr. Patenaude administered a battery of tests to evaluate Hill's cognitive and psychiatric status, the results of which were "consistent with a deterioration of cognitive functioning attributable to" multiple sclerosis. (Doc. 6-7, 465). Dr. Patenaude diagnosed Hill with a cognitive disorder, and indicated that she had "particular difficulty with more complex thinking processes as well as with working memory." (Doc. 6-7, at 465). Dr. Patenaude stated that Hill would have significant difficulty engaging in competitive employment requiring complex thinking tasks, such as organizing and processing information. He indicated that Hill would also have difficulty managing information required for any job requiring her to work efficiently, such as remembering schedules. (Doc. 6-7, at 465). Dr. Patenaude further noted that Hill had high levels of anxiety and depression, and emotional reactivity related to PTSD, and would have "difficulty maintaining dependable and appropriate interpersonal interactions with coworkers or when working directly with the public." (Doc. 6-7, at 466).

Dr. Patenaude performed his neuropsychological evaluation in late June 2015, just a few days before Hill's administrative hearing with the ALJ. Dr. Patenaude had not completed his written report by the time of the hearing, so the ALJ agreed to hold the record open for a period of twenty days to allow Hill to submit the report. (Doc. 6-2, at 56-57). During the hearing, the ALJ elicited testimony from psychological expert Dr. Michael Enright. Dr. Enright testified based on his review of the medical opinion evidence that Hill had only one medically determinable mental impairment – PTSD. Dr. Enright testified that Hill's PTSD caused only mild limitations in concentration, persistence, and pace, and mild to moderate limitations in activities of daily living and social functioning. Dr. Enright further testified that there was no evidence that Hill had any difficulty with memory function, and indicated that Hill would have no difficulty in understanding and remembering both simple and detailed instructions. (Doc. 6-2, at 81-85).

Dr. Enright's testimony was notably different from Dr. Patenaude's opinion that Hill also suffered from a cognitive impairment, had particular difficulty with complex thinking processes and working memory, and would have difficulty performing work involving complex thinking tasks. Although Dr. Enright did not have the opportunity to review Dr. Patenaude's report before testifying at the

hearing, the ALJ received the report after the hearing and discussed it in his written decision.

Where, as here, the opinion of an examining physician is controverted by other evidence in the record, the ALJ may discount the opinion by providing specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ gave Dr. Patenaude's opinion little weight for two reasons, neither of which is specific, legitimate, and supported by substantial evidence. First, the ALJ discounted Dr. Patenaude's opinion because it "was rendered after a single examination." (Doc. 6-2, at 40). This is not a specific and legitimate reason for rejecting the opinion of an examining physician, as virtually all examining opinions are based on a single examination.

Next, the ALJ stated that Dr. Patenaude's opinion was not consistent with Hill's treatment history or the mental status examination findings of her treating providers, and was not indicative of Hill's mental functioning during the entire period at issue. But the mental status examination findings referred to by the ALJ do not address or evaluate Hill's cognitive abilities. Rather, they simply indicate that Hill's treating providers typically found she was normally dressed, adequately groomed, had normal speech, and was pleasant and cooperative at her medical

8

appointments. (Docs. 6-2, at 39; 6-7, at 6-11, 77, 218, 230). Contrary to the ALJ's statement, medical records from treating physician Dr. Sherry Reid reflect that by the end of 2014, Hill was experiencing memory loss and cognitive dysfunction secondary to relapsing remitting multiple sclerosis. (See e.g. Doc. 6-7, at 336, 339, 342). And after Dr. Patenaude's neuropsychological evaluation, Hill participated in cognitive speech therapy to address her memory deficits and other cognitive limitations. (See Doc. 6-7, at 543-665). Although Hill did not begin cognitive speech therapy until September 2015, those treatment notes were part of the record by the time of the ALJ's decision in October 2015. In light of this evidence, the reasons provided by the ALJ for discounting Dr. Patenaude's assessment of Hill's mental limitations are not supported by substantial evidence.

Instead of providing these later-acquired records to Dr. Enright and soliciting additional testimony, the ALJ denied Hill's request for a supplemental hearing and relied on Dr. Enright's initial testimony in finding that Hill did not have any severe mental impairments. Because Dr. Enright testified without the benefit of these later-acquired records and was never given the opportunity to review them, his assessment of Hill's mental limitations was not based on all of the relevant evidence and is not substantial evidence for the ALJ's residual functional capacity finding.

The ALJ also relied on the opinions of state agency psychologist Dr. Robert Bateen and state agency psychiatrist Dr. Lisa Renner in finding that Hill did not have any severe mental impairments. (Doc. 6-2, at 40). But Dr. Bateen and Dr. Renner both rendered their opinions in mid-2014, which means that, like Dr. Enright, they did not review the results of Dr. Patenaude's June 2015 neuropsychological evaluation and their opinions were not based on all of the relevant evidence. (Doc. 6-3, at 3-35).

Relying primarily on Dr. Enright's testimony and the opinions of Dr. Bateen and Dr. Renner, the ALJ did not include any mental limitations in the hypothetical question he posed to the vocational expert. (Doc. 6-2, at 124-25). The vocational expert testified that a person with Hill's physical limitations would be able to perform past relevant work as a medical receptionist and legal secretary as those jobs are generally performed in the national economy. (Doc. 6-2, at 124-25). Based on the vocational expert's testimony, the ALJ found Hill not disabled at step four.

The ALJ's reliance on Dr. Enright's testimony and the opinions of Dr. Bateen and Dr. Renner is particularly problematic in light of the ALJ's step four determination. As described in the Dictionary of Occupational Titles, the job of legal secretary requires reasoning level four – which anticipates complex tasks.

DICOT 201.362-101 (G.P.O.), 1991 WL 671667; DICOT, App. C., 1991 WL 688702. The job of medical receptionist requires reasoning level three – which is not consistent with a limitation to simple, routine, or repetitive work. DICOT 237.367-038 (G.P.O.), 1991 WL 672192; *Zavalin v. Colvin*, 778 F.3d 842, 843-44 (9th Cir 2015). When Hill was working as a medical receptionist, she had a "high error rate" and was warned by her employer for making registration, billing, and other errors on the job. (See e.g. Doc. 6-6, at 109-112). That Hill may have had difficulty performing the mental tasks associated with her past relevant work is consistent with Dr. Patenaude's opinion that she would have difficulty performing work involving complex thinking tasks.

Because the ALJ did not provide sufficient reasons for rejecting Dr. Patenaude's opinion, and relied on opinions from a psychological expert and state agency reviewers who had not seen Dr. Patenaude's report or Hill's most recent medical records, this case must be remanded.

The proper course in most cases is to remand for further proceedings. Remand for an award of benefits is appropriate only in "rare circumstances," when certain conditions are met. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Remand for an award of benefits is appropriate only where (1) the ALJ has not provided legally sufficient reasons for rejecting evidence, such

as the claimant's testimony or a medical opinion; and (2) the record has been fully developed and there are no outstanding issues on which further administrative proceedings would be useful. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). If these two conditions are satisfied, the court credits the discredited evidence "as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 775 F.3d at 1101). Even if the first two conditions are satisfied and the court credits the evidence as true, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045. Remand for an award of benefits is proper only if there is no serious doubt as to disability.

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to reevaluate Dr. Patenaude's opinion as to Hill's mental limitations, provide that opinion to the psychological expert and obtain additional psychological expert testimony, reevaluate Hill's residual functional capacity, and obtain additional vocational expert testimony for purposes of step four and step five. Under the circumstances, remand for further administrative proceedings rather than for an immediate award of benefits is the appropriate remedy. Because this matter must be remanded for further consideration of Hill's mental

impairments, the Court declines to address Hill's remaining arguments.

## IV. Conclusion

For the reasons set forth above,

IT IS ORDERED that the Commissioner's decision is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 21st day of June, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge